## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | | |
|---|---|---|---|
| TAMIM SAMADI (431444)<br>a/k/a TAMIN SAMADI, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | No. 23 C 3789 | |
| v. | ) | | |
| | ) | Judge Sara L. Ellis | |
| SHERIFF RON HAIN, CORRECTIONAL | ) | | |
| OFFICER HERNANDEZ, CORRECTIONAL | ) | | |
| OFFICER MARTINEZ, CORRECTIONAL | ) | | |
| OFFICER KUBAN, and KANE COUNTY | ) | | |
| SHERIFF'S OFFICE, | ) | | |
| | ) | | |
| Defendants. | ) | | |

## OPINION AND ORDER

After Plaintiff Tamim Samadi,[1] a pretrial detainee at the Kane County Adult Justice

Center (the "Center"), stated that he did not want to move to a different cell block and asked to

speak to a supervisor, Defendant Officer Hernandez threw him to the ground and remained on

top of Samadi for two minutes, causing Samadi to suffer a fractured collarbone. Defendant

Officers Martinez and Kuban were present during the altercation, although neither were directly

involved. Following this incident, Samadi brought suit under 42 U.S.C. § 1983 against

(1) Officer Hernandez for excessive force, (2) Officers Martinez and Kuban for failure to

intervene, and (3) Sheriff Ron Hain and the Kane County Sheriff's Office for *Monell* liability for

violations of the Fourteenth Amendment. Now Hain and the Kane County Sheriff's Office and

Kuban separately move to dismiss the amended complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim. Because Samadi has sufficiently pleaded a failure

to intervene claim against Kuban only as it relates to Kuban's actions after Hernandez threw

---

[1] Samadi's first name is "Tamim," but some records misspell his name as "Tamin."

Samadi on the ground, the Court grants in part and denies Kuban's motion to dismiss. Further, because Samadi does not sufficiently allege a claim against Hain in his individual capacity, but does allege facts to support a *Monell* claim, the Court grants in part and denies in part Hain and the Kane County Sheriff's Office's motion to dismiss.

## BACKGROUND[2]

Samadi was a pretrial detainee incarcerated at the Center from approximately October 2021 to April 2022. The Center has multiple cell blocks, known as and differentiated by alphabetical "pods" (e.g., "A-Pod," "B-Pod," etc.). Samadi initially resided in B-Pod, but on December 20, 2021, Martinez approached Samadi and told him to pack his property and move to E-Pod. Samadi responded that he did not want to move, but Martinez informed Samadi that the order to move him came from a supervisor. Samadi requested to speak with the supervisor who had ordered his transfer to E-Pod, again declining to pack or move. Martinez called for assistance from Hernandez, who approached Samadi as he once more requested to speak to the supervisor. At this time, Kuban took over manning the large desk that oversees the common area and cells in B-Pod. The desk was several feet away from the conversation, but Kuban was still within earshot and had a clear line of sight to the men.

After Hernandez approached Martinez and Samadi, he told Samadi that he would not summon the supervisor and directly ordered Samadi to pack his property and leave his B-Pod housing. Samadi continued to request to speak to the supervisor, placing his hands behind his back to show that he did not intend to fight the officers. Hernandez then grabbed Samadi, threw him to the ground, and landed on top of him with his full body weight. When Samadi hit the ground, his head slammed on the concrete floor, leaving him bleeding from his forehead, and he

---

[2] The Court takes the facts in the background section from Samadi's amended complaint and presumes them to be true for the purpose of resolving the motions to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

felt an immense pain in his left shoulder.  Hernandez remained on top of Samadi for two minutes, even though Samadi did not struggle or fight against Hernandez and repeatedly told Hernandez that he was in intense pain.  Kuban began locking B-Pod, ushering detainees to their cells.  Martinez, still standing only a few feet away, called for additional officers.  When they arrived, Hernandez and two additional officers handcuffed Samadi behind his back, and they escorted him to E-Pod.

Once Samadi was in E-Pod, the Center's medical staff examined Samadi and determined that he needed an x-ray on his shoulder.  Four days later, on December 24, 2021, an x-ray revealed that Samadi fractured his collarbone during the incident.  Samadi subsequently spoke with other Center detainees who had seen the altercation or had heard about it.  Several detainees told Samadi that Hernandez was known to be violent and that other detainees had filed complaints with the Center about Hernandez's behavior towards them.  As of November 15, 2024, the date Samadi filed the amended complaint, he continued to feel pain in his collarbone, especially when he lifts heavy objects, is outside in cold weather, and engages in activities that involve lifting or twisting his arm.  He also suffers from headaches.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits.  Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).  In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor.  *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016).  To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v.*

3

*Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Officer Kuban

Samadi brings a claim against Kuban, alleging that Kuban failed to intervene on Samadi's behalf as Hernandez violated his constitutional rights. A plaintiff may prevail against an officer that did not himself infringe on the plaintiff's rights if the officer was present and failed to prevent another law enforcement officer from violating those rights despite a "realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). The Seventh Circuit has implied that a "realistic opportunity to intervene" may exist whenever an officer could have "called for backup, called for help, or at least cautioned [the excessive force defendant] to stop." *Id.* "Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Lanigan v. Vill. of E. Hazel Crest*, 110 F.3d 467, 478 (7th Cir. 1997).

Kuban argues that Samadi does not allege facts to show that Kuban had a realistic opportunity to intervene because (1) when Kuban was manning the desk, Samadi's allegations do not suggest that Kuban could have known he needed to intervene before the physical altercation started, and, (2) when Hernandez was on top of Samadi for two minutes, Kuban was engaged in other duties, locking down B-Pod and returning detainees to their cells. Samadi responds by pointing to allegations in his amended complaint that Kuban was mere feet from the interaction,

close enough to see and hear those involved, and failed to react to the force used against Samadi at any time, even as Samadi cried out in pain.

The Court must first address whether Samadi sufficiently alleges that Hernandez violated his constitutional rights. *See Sandra T.E. v. Sperlik*, 639 F. Supp. 2d 912, 920 (N.D. Ill. 2009). Despite Samadi putting his hands behind his back to show that he did not intend to fight, Hernandez, without warning, grabbed Samadi and threw him to the ground, causing a head wound and a fractured collarbone. Hernandez then restrained Samadi with his full body weight for two minutes, despite Samadi's cries of pain. Taking these allegations as true, Samadi has sufficiently alleged that Hernandez violated his constitutional rights. *See Moore on behalf of PM v. Lauer*, No. 22 C 50354, 2023 WL 3199821, at *7 (N.D. Ill. May 2, 2023) (finding, at the motion to dismiss stage, that the plaintiff had sufficiently alleged that the defendant school officer had violated her minor son's constitutional rights where the officer "without warning, lifted [the minor] up from behind and 'slammed' him into the floor, headfirst, causing serious, life-altering injuries" despite the minor not resisting and without observing the other school official to be in any physical danger whatsoever).

Therefore, the Court must now consider whether Samadi has sufficiently alleged that Kuban knew of the imminent or ongoing violation of Samadi's constitutional rights and, despite having a reasonable opportunity to do so, failed to intervene. *Sandra T.E.*, 639 F. Supp. 2d at 920. Samadi alleges that Kuban "did not move to stop Officer Hernandez from throwing [him] to the ground," Doc. 15 ¶ 81, but simultaneously alleges that he posed "[n]o threat to Officer Hernandez" because he "was not physically fighting Officer Hernandez and had his hands behind his back while speaking to Officer Hernandez," *id.* ¶ 71. Samadi also alleges that Hernandez "immediately" grabbed him and threw him on the ground. *Id.* ¶ 36. Based on these

5

facts, Samadi identifies no opportunity by which Kuban could have learned of and intervened against the forthcoming, sudden actions of Hernandez. *See Moore*, 2023 WL 3199821, at *7 (finding the plaintiff's failure to intervene claim cannot go forward because the plaintiff did not identify an opportunity where the defendants could have learned of and intervened where the one defendant "'immediately and physically took over the situation' and lifted and slammed [the minor] to the floor 'without first giving [the minor] any verbal instruction or warning whatsoever'"). Accordingly, his failure to intervene claim cannot go forward as it relates to Kuban's failure to intervene before Hernandez threw Samadi to the ground.

Samadi's failure to intervene claim can go forward, however, as it relates to Kuban's failure to intervene when Hernandez remained on top of Samadi for two minutes, despite Samadi repeatedly saying that he was in intense pain. Samadi alleges that Kuban was "standing at the desk which surveys B-Pod, a few feet further away" and "within earshot of Officer Hernandez and Mr. Samadi" with "a clear line of sight" to them. Doc. 15 ¶¶ 49–50. He also alleges that after Hernandez was fully on top of Samadi, Kuban locked down B-Pod, but "did not heed Mr. Samadi's cries of pain and did not tell Officer Hernandez to get off him or loosen his grip" nor "step in to move Officer Hernandez off Mr. Samadi or move Mr. Samadi to a more comfortable position." *Id.* ¶¶ 52–55. As alleged, Kuban saw and heard Hernandez restrain Samadi for two minutes and, despite having a reasonable opportunity to stop or prevent Hernandez from allegedly violating Samadi's constitutional rights, failed to do so. And Kuban's argument that he had no opportunity to intervene because he was locking down B-Pod is unavailing. *See Craig v. Dralle*, No. 13 C 07329, 2018 WL 4699752, at *6 (N.D. Ill. Sept. 30, 2018) (denying defendant's motion for summary judgment on plaintiff's failure to intervene claim because "even assuming [plaintiff] could not leave his assigned area [because he was preoccupied with securing

inmates], he has not proved that he could not have called for backup, called for help, or cautioned [the other defendant] to stop"). Samadi, therefore, has stated a claim for failure to intervene against Kuban as it relates to Hernandez's ongoing restraint of Samadi. *See Moore*, 2023 WL 3199821, at *7 (allowing the plaintiff's failure to intervene claim to proceed against the defendants who were present when another defendant "attempted to tackle or jump on [the minor], pushing [him] into an office and ending up on top of [him], with [him] restrained" but failed to stop or prevent these actions); *cf. Lanigan*, 110 F.3d at 478 (finding that one poke and push and a contemporaneous statement were not "so prolonged that [the defendant] could know or be deliberately indifferent to [the other defendant]'s actions").

## II.     Sherrif Hain and the Kane County Sheriff's Office

In his amended complaint, Samadi does not designate whether he sues Hain in his official or individual capacity. Without this clarity, Hain argues for dismissal under both theories, and the Court, therefore, addresses each argument in turn.

### A.     Individual Liability

Because § 1983 creates a cause of action based on personal liability and predicated upon fault, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005). Samadi cannot hold Hain liable under § 1983 based on *respondeat superior*. *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015). In other words, the mere fact that a sheriff is a supervisor is insufficient to impart liability, even if he was negligent. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001); *see Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988) ("[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable[.]"). Resultingly, courts normally cannot hold liable a high-level

official for "clearly localized, non-systemic violations." *Antonelli v. Sheahan*, 81 F.3d 1422, 1428–29 (7th Cir. 1996).

High level officials, however, "can be expected to have personal responsibility" for systemic conditions. *Id.* at 1429. An individual may be "personally responsible for the deprivation of a constitutional right" because "he directed the conduct causing the constitutional violation, or it occurred with his knowledge or consent." *Sanville*, 266 F.3d at 740. Put differently, supervisors may be liable if they "know about the [unconstitutional] conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Jones*, 856 F.2d at 992. An individual does not have to participate directly in the deprivation, but they must have acquiesced in some demonstrable way to the alleged constitutional violation. *Sanville*, 266 F.3d at 740. As follows, supervisors may be liable under § 1983 for deliberate, reckless indifference to the misconduct of their subordinates. *Id.*

Samadi alleges that Hain "oversees the Center and its personnel, including hiring and firing," Doc. 15 ¶ 90, multiple detainees submitted complaints regarding Hernandez's use of violence before his altercation with Samadi, *id.* ¶ 91, and nonetheless Hernandez remained employed as a correctional officer at the Center, *id.* ¶ 92. Even assuming these complaints were meritorious, Samadi does not allege that Hain had any knowledge of these complaints, or any involvement whatsoever in Hernandez's use of excessive force or his retention as a Center employee. *See Potts v. Moreci*, 12 F. Supp. 3d 1065, 1077 (N.D. Ill. 2013) (finding the plaintiff did not allege sufficient facts to suggest a plausible claim against the sheriff defendant in his individual capacity because the plaintiff did not allege that the defendant sheriff had any personal knowledge of or involvement in the alleged constitutional violation). Accordingly, Samadi cannot proceed with his individual liability claim against Hain.

## B.   *Monell* Liability

Next, the Court must consider whether Samadi has sufficiently alleged a *Monell* claim against Hain in his official capacity and the Kane County Sheriff's Office.  "As an Illinois sheriff, [Hain] has final policymaking authority over [Center] operations."  *Miranda v. Cnty. of Lake*, 900 F.3d 335, 344 (7th Cir. 2018).  Therefore, he is the proper party for an official liability claim alleging policies "that deprive inmates of their federal rights," *id.*, because "[a] suit against a governmental officer in his official capacity is really a suit against the entity of which the officer is an agent," *Franklin v. Zaruba*, 150 F.3d 682, 684 n.1 (7th Cir. 1998).  Such a suit is permissible under § 1983, but only when a governmental policy or custom was "the moving force" behind the alleged constitutional violation.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  To state a *Monell* claim, then, Samadi must allege (1) an express policy that, when enforced, causes a constitutional violation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority.  *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000).

To establish liability for a harmful custom or practice, a plaintiff must show that a defendant was "deliberately indifferent as to [the] known or obvious consequences."  *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002).  But plaintiffs seeking to impose liability on a theory of inaction must typically point to evidence of a "prior pattern of similar constitutional violations."  *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 380 (7th Cir. 2020).  "[I]n situations where rules or regulations are required to remedy a potentially dangerous practice, the [sheriff's] failure to make a policy is also actionable."  *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th

9

Cir. 2010). The Seventh Circuit has declined to adopt "any bright-line rules defining a 'widespread custom or practice.'" *Id.* To adequately claim that "there is a policy at issue rather than a random event," as required, the plaintiff might allege "an implicit policy or a gap in expressed policies," or "a series of violations." *Id.* (citation omitted) (internal quotation marks omitted).

Samadi does not specifically challenge any Sheriff's Office policy as facially unconstitutional. Nor does he plead that Hain made some final decision. Instead, Samadi argues that the amended complaint sufficiently alleges the existence of an unconstitutional custom or practice because the detainees' complaints informed Hain and the Sheriff's Office of Hernandez's violent behavior, and, "if there was a policy in place regarding the suspension or firing of individuals known to act violently towards detainees, it was either inadequate or not followed in the case of Officer Hernandez." Doc. 41 at 10. At the motion to dismiss stage, these allegations make plausible an inference that this incident was not a random, isolated event, but rather the result of Hain and the Sheriff's Office's *de facto* policy of tolerating Hernandez's use of excessive force. *See Cheatham v. City of Chicago*, No. 16 C 3015, 2016 WL 6217091, at *9 (N.D. Ill. Oct. 25, 2016) (pleading of *Monell* claim upheld where the plaintiff "alleged that, prior to [the date of the incident], the City of Chicago was aware of several complaints of police misconduct involving the use of excessive force and numerous claims of constitutional violations involving [the defendant police officer] specifically"); *Listenbee v. City of Harvey*, No. 11 C 03031, 2013 WL 5567552, at *3 (N.D. Ill. Oct. 9, 2013) (finding that the plaintiff sufficiently pleaded a *Monell* claim because the plaintiff's factual allegations, including a "brutal, unprovoked attack that began just outside the police headquarters, suggesting that [the defendant officer] made no attempt to avoid detection and had no expectation of negative reaction by

supervisors or other police officers," support the inference that the violence he experienced was not an insolated incident and could have resulted from a policy or practice of the police department); *cf. Klinger v. City of Chicago*, No. 15 C 1609, 2017 WL 736895, at *18 (N.D. Ill. Feb. 24, 2017) (finding that the inference of an unofficial policy or custom was too weak and dismissing the plaintiff's *Monell* claim because the plaintiff's complaint does "not involve allegations of other similar complaints or incidents"). Accordingly, the Court concludes that Samadi's *Monell* claim against Hain and the Kane County Sheriff's Office may proceed.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Hain and the Kane County Sheriff's Office's motion to dismiss [37] and grants in part and denies in part Kuban's motion to dismiss [38]. The Court dismisses Samadi's individual liability claim against Hain and his failure to intervene claim against Kuban, but only as the claim relates to Kuban's failure to intervene before Hernandez threw Samadi to the ground.


Dated: September 23, 2025

_____
SARA L. ELLIS
United States District Judge

11